GRIFFIN, J.
The State of Florida appeals the dismissal of a petition for involuntary commitment under the Jimmy Ryce Act. §§ 394.910-.931, Fla. Stat. (2000). We vacate the order.
On November 17, 1997, Howard J. Rompre [“Rompre”] pled guilty in case no. 97-313 to attempted sexual battery, a second-degree felony, for an offense committed on January 27, 1997. The plea was to an agreed-upon upward departure sentence, in exchange for which defendant was allowed to plead to a reduced charge, and additional charges were dismissed. Thereafter, Rompre was sentenced to twenty-one months in the Department of Corrections [“DOC”], followed by two years of sex offender probation.
On August 17, 1998, Rompre was released from prison to start probation. He *454 violated his probation the following month. On December 7, 1999, he was sentenced to a new two-year period of supervision. However, on December 28, 1999, Rompre again violated his probation.
Rompre admitted violating his probation for a second time on August 31, 2000. On that date, he was resentenced pursuant to a scoresheet which showed a guidelines sentence on violation of his probation of fifteen to twenty-five months in the DOC.[1] The trial court calculated a credit for time served of 984 days (or 32.8 months). Nevertheless, the State asked the court to impose a “prison sentence.” The court obliged and sentenced Rompre to 984 days in the DOC, but explained “[t]here is no additional time to be served.” Defense counsel therefore countered by asking the court to sentence Rompre to “time served.” He expressed concern that: “He may have to go back to DOC [for calculation of his release date if he is sentenced to a number of days]”. The court agreed: “He may. That’s a possibility, Mr. Rompre. I really don’t know.” The court then asked the prosecutor why he had wanted defendant to be given a prison sentence. The prosecutor explained:
Because he’s a sexual offender, Judge. I think he needs to be screened for the Jimmy Ryce Act, which is what they’re going to do when they do that, and that’s in order to protect the public. I mean, if he’s not in that act, he’s going to go free. If he is, that’s something that needs to be addressed.
A second prosecutor added that Rompre had to be in “total confinement” before he could be screened for continuing commitment under the Jimmy Ryce Act, which was why he had to be sentenced to 984 days, rather than time served. She remarked that “[p]eople are not screened out of the county jails or on probation, for that matter, Your Honor.”
The judge left the sentence as imposed, sentencing Rompre to a term of 984 days in the DOC, with credit for 984 days served. The credit provision stated:
It is further ordered that the defendant be allowed 984 days time served between date of arrest as a violator following release from prison to the date of resentencing. The Department of Corrections shall apply original jail time credit and shall compute and apply credit for time served only pursuant to Section 921.0017, Florida Statutes, in this case. (Offenses committed on or after January 1,1994)
The judge asked for return of the file to him so he could issue written reasons for the upward departure. No departure order was ever filed.
On September 1, 2000, Rompre was returned to the DOC. His release date was calculated by subtracting 392 days jail time and 592 days time served in the DOC from his sentence of 984 days, which would have resulted in a zero sentence to be served. However, the figure of 592 days for time served in the DOC included twenty-four days gain time, which the department forfeited pursuant to section 944.28(1). Thus, Rompre was given twenty-four additional days to serve and a tentative release date of September 24, 2000.
During September of 2000, Rompre was evaluated for continuing commitment under the Jimmy Ryce Act. On September 21, 2000, the State filed a petition to involuntarily commit Rompre as a sexual pre *455 dator. That same day, an ex parte probable cause finding was made and trial was set for October 30, 2000.
It is unknown why trial did not take place on October 30, 2000. However, on November 2, 2000, Rompre purported to appeal the sentencing order of August 31, 2000. The appeal was untimely, but Rompre was granted the right to a belated appeal on April 5, 2001. Additionally, on May 29, 2001, Rompre filed a motion to dismiss the commitment petition, alleging the State had failed to comply with the time provisions of the Jimmy Ryce Act. Rompre’s complaint was that the judge made it clear at the August 31, 2000 sentencing proceeding that he was not supposed to serve any more time. Rompre asserted that he was not in legal confinement when he was transferred for evaluation and the commitment petition was served, because there had been a complete failure to comply with the time requirements set forth in section 394.9135.
On June 25, 2001, a hearing was held on Rompre’s motion to dismiss the commitment petition. At the hearing, defense counsel argued that the DOC had erroneously refused to credit Rompre with twenty-four days spent in the Citrus County jail, apparently on another offense. He contended:
The problem is, D.O.C. left off 24 days that the sentencing judge had given credit for in Citrus County [which counsel said the court had the discretion to do under 921.16]. There is no figure representing time spent in Citrus Coun-' ty-
Defense counsel also noted that one of the reasons Rompre was credited with time served was the departure problem. He said departure never became an issue because the judge sentenced him to time served.
At the conclusion of the hearing, the judge said he would grant the motion to dismiss the commitment petition. However, no order was immediately entered. Instead, the State on September 24, 2001 filed a motion to correct Rompre’s sentence in the trial court, acknowledging that Rompre had received an improper departure sentence upon violating his probation and that he was entitled to be resentenced under the guidelines to between fifteen and twenty-five months in the DOC. Rompre responded on November 1, 2001 by dismissing his appeal of the August 31, 2000 sentencing order. The following day, on November 2, 2001, Rompre filed a motion to strike the State’s motion to correct his sentence, in which he argued that the trial court no longer had jurisdiction to consider the State’s motion to correct his sentence under rule 3.800(b) because he had dismissed his appeal.[2]
On November 2, 2001, a hearing on the motion to correct Rompre’s sentence and the motion to strike was held in trial court. Upon learning that Rompre had dismissed his appeal, the court asked Rompre if he was now satisfied with his sentence. Rompre said he was. He also verbally agreed he was waiving any future collateral attacks on his sentence.
On November 30, 2001, the court entered an order granting Rompre’s motion to dismiss the commitment petition. The order stated:
1. That the Petition for commitment was filed on September 21, 2000.
2. That the Respondent’s sentence on case 97-313-CF-X expired on August 31, 2000.
*456 3. That the Defendant was detained by the Department of Corrections beyond his release date for the purpose of an evaluation to determine if he met the criteria for commitment under Florida Statute 394.910 through 394.930.
4. That the State of Florida failed to comply with the provisions of Florida Statute 394.9135.
Having dismissed the State’s petition, the commitment court ordered Rompre’s release from custody.
The State argues that the trial court erred in releasing Rompre based on a determination that his sentence expired on August 31, 2000, which made both the assessment by the multi-disciplinary team and the petition for commitment untimely under section 394.9135, Florida Statutes (2000).[3] The State contends that this constituted an improper collateral attack on the sentence imposed in a separate criminal case, and that the trial court had no authority to make a determination that Rompre was unlawfully detained by the DOC beyond the expiration of his sentence, as part of a civil commitment proceeding. Further, even if the commitment court could review the sentence, the authority to regulate gain time resides exclusively with the DOC and the DOC’s decision to forfeit gain time cannot be countermanded by the trial court. It also argues that the commitment court erroneously recharacterized Rompre’s sentence as a sentence for “time served,” given that this alternative was expressly rejected by the trial court at the August 30, 2000 sentencing hearing. Finally, the State contends that even if Rompre’s sentence expired on August 31, 2000 and he *457 was entitled to release because of the failure to comply with the time limitations set forth in section 394.9135, it was error to dismiss the State’s petition in its entirety because of subsection (4) of Section 394.9135 of the statute, which authorizes the State to proceed even if the inmate has been released.
Rompre responds that the record contains competent, substantial evidence to support the trial court’s determination that his sentence expired on August 31, 2000. He notes that the judge who revoked his probation announced his express intention that he was to serve no further time in this case — e.g. that his sentence was intended to be the equivalent of an indefinite sentence for “time served.” He therefore maintains that the DOC was without authority to revoke his gain time, thereby improperly adding twenty-four days to his sentence which resulted in him being unlawfully held in “total confinement” when the commitment petition was filed.
The key issue to be resolved is whether the commitment court has the power to look behind Rompre’s actual release date of September 24, 2000. Rompre’s defense to the State’s commitment petition required the commitment court to assess the validity of his sentence and adjust that sentence as part of the commitment proceeding. However, the sentence was valid unless corrected according to law. Here, Rompre abandoned the appeal of his sentence in the criminal case and did not pursue his administrative remedies concerning the forfeiture of his gain time. Had he done so, he may well have succeeded.
In Smith v. Kearney, 802 So.2d 387 (Fla. 4th DCA 2001), the appellant was a detainee under the Jimmy Ryce Act who filed a petition for a writ of habeas corpus. In his petition, Smith claimed that he had been unlawfully detained by the DOC and should have been released to serve the probationary portion of his sentence prior to the effective date of the Jimmy Ryce Act, on January 1,1999. Not being lawfully in custody when the Act went into effect, Smith said it should not apply to him. On appeal, the Fourth District determined that it had no power within the commitment proceedings to consider the alleged “illegality” of Smith’s sentence in the criminal proceedings. The court explained:
We are not the proper court to correct the alleged “illegality” of the sentence Smith has already served. Whether concurrent terms of probation and imprisonment are illegal is an issue that is cognizable in a motion to correct an illegal sentence. See Benjamin, 705 So.2d at 126. It appears the problem facing Smith in this action is that he did not move to correct his sentence by either filing a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800 or through a rule 3.850 motion prior to the effective date of the Act.
Id. at 389-390. Smith reinforces our view that Rompre was required to first address his sentence in the criminal case. The commitment court erred in entertaining a collateral attack on the sentence in the course of commitment proceedings. We accordingly vacate the order of dismissal and remand.[4]
ORDER VACATED and REMANDED.
COBB, J„ and STRICKLAND, S.W., Associate Judge, concur.

. The scoresheet used by the trial court showed 36 points for a level six offense, plus 12 additional points for two release program violations, for a total of 48 points. Once the appropriate calculations were made, these points yielded a permissive sentence of from 15 months to 25 months in the DOC.

. He noted that rule 3.800(b) states, “Motions may be filed by the state under this subdivision only if the correction of the sentencing error would benefit the defendant or to correct a scrivener’s error.”

. Section 394.9135 provides:
Immediate releases from total confinement; transfer of person to department; time limitations on assessment, notification, and filing petition to hold in custody; filing petition after release
(1) If the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason, the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the Department of Children and Family Services to be held in an appropriate secure facility.
(2) Within 72 hours after transfer, the multidisciplinary team shall assess whether the person meets the definition of a sexually violent predator. If the multidisciplinary team determines that the person does not meet the definition of a sexually violent predator, that person shall be immediately released. If the multidisciplinary team determines that the person meets the definition of a sexually violent predator, the team shall provide the state attorney, as designated by s. 394.913, with its written assessment and recommendation within the 72-hour period or, if the 72-hour period ends on a weekend or holiday, within the next working day thereafter.
(3) Within 48 hours after receipt of the written assessment and recommendation from the multidisciplinary team, the state attorney, as designated in s. 394.913, may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation. If a petition is not filed within 48 hours after receipt of the written assessment and recommendation by the state attorney, the person shall be immediately released. If a petition is filed pursuant to this section and the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order the person be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part.
(4) The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not disposi-tive of the case and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part.

. Rompre makes a general due process attack based on such cases as Tanguay v. State, 782 *458 So.2d 419 (Fla. 2d DCA 2001), review granted, 821 So.2d 302 (Fla.2002), but we find no violation of due process. Had Rompre's sentence been invalidated or his entitlement to immediate release been established as required by law, his evaluation for commitment while unlawfully detained would not support commitment. The more difficult question is what, if any, might be the effect, for purposes of commitment, of his release, assuming he was not shown to have reoffended while released. See In re Young, 122 Wash.2d 1, 857 P.2d 989 (1993).